148 S.W.3d 427 (2004)
Antero PEREZ aka Antero P. Gonzalez and Patricia Saenz, Appellants,
v.
TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.
No. 08-03-00430-CV.
Court of Appeals of Texas, El Paso.
August 5, 2004.
*430 Eduardo Gamboa, Thomas E. Stanton, El Paso, TX, for Appellants.
Christopher Benjamin Dove, Locke Liddell & Sapp LLP, Houston, for Appellee.
Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

OPINION
ANN CRAWFORD McCLURE, Justice.
Antero Perez a.k.a. Antero P. Gonzalez (Perez)[1] and Patricia Saenz appeal from a judgment terminating their parental rights and awarding custody of the children to the Texas Department of Protective and Regulatory Services (the Department).[2] We affirm.

FACTUAL SUMMARY
Saenz and Perez began dating in 1993 when Saenz was fifteen years old. Perez, who was twenty-six years old when they met, had a prior sexual assault conviction out of El Paso County. Perez was deported as a result of that conviction and he returned to the United States in violation of the terms and conditions of his probation. They began living together in 1995 around the time Saenz gave birth to O.P., their son. A.J.P., a daughter, was born in 1998. The couple lived in Mexico, first in Torreon, Durango, and then later in Ciudad Juarez. During this time, Perez began drinking heavily and using four or five diamond folds of cocaine daily. The family then moved to El Paso although Perez was in the country illegally. Perez worked odd jobs but he could not maintain employment because of his heavy drinking. Perez and Saenz often argued in the presence of the children and he sometimes became violent. Finally in 2000, Saenz and the children left after one of these violent episodes. O.P. recalled these confrontations and could describe the assaults. Perez saw the children only once after Saenz left and he did not provide any child support.
Perez was arrested for burglary of a habitation and entered a plea of guilty in *431 2000. He was deported to Mexico for ten years as a condition of probation but once again, he returned to the United States in violation of his probation terms. He was later convicted of two misdemeanor offenses, driving while intoxicated and criminal mischief. Perez denied a federal drug conviction but admitted that he was deported again in 2002 for twenty years.[3] Perez did not maintain any contact with the children, and consequently, did not learn that the children were in foster care until 2002 when a caseworker wrote him a letter while he was incarcerated. Caseworkers attempted to conduct a home study at Perez's home in Torreon, but he moved to a "cheap hotel" in Juarez. Despite the caseworkers' advice that he should return to Torreon so that they could finish the home study, Perez continued to live in Juarez. He had been unemployed for several months at the time of trial.
After leaving Perez, Saenz and the children lived with her mother for a few weeks but she eventually got her own apartment. Saenz allowed her brother to live with them, and they were evicted because the brother possessed marihuana in the apartment. Saenz began dating Martin Urbieta in 2001 and she and the children began living with him in October of that year. Saenz began using cocaine with Urbieta. Urbieta often struck Saenz in the presence of the children. He also became violent with the children by hitting them with a belt, choking them, pushing them, throwing them on the bed, and pulling their hair. Both children reported that Urbieta would throw them on the bed if they asked for food.
In August 2001, the Department received a report of neglectful supervision when six-year-old O.P. was observed playing outside after dark without adult supervision. An investigation confirmed this report and also determined that O.P. was playing in industrial dumpsters. Saenz was not supervising O.P. nor was she caring for the children. Both children wore dirty, soiled clothing and three-year-old A.J.P. was not toilet trained. O.P. also had a patch of eczema on his scalp. When Saenz refused to participate in any of the offered services, the Department filed a petition on November 26, 2001, seeking an order to require Saenz to participate in services to protect the children. Saenz failed to comply with the order. After Saenz tested positive for cocaine in January 2002, the children were placed with their maternal grandmother. Liberal visitation was permitted but Saenz did not visit consistently between late January and May 2002. She also refused all drug treatment recommendations, including in-patient treatment. Saenz became pregnant again in 2002 and she admitted using cocaine weekly despite her pregnancy. She continued to reside with Urbieta. The trial court named the Department temporary managing conservator of the children. Because the grandmother became unable to care for the children, they were placed in foster care. On May 27, 2003, the Department amended its petition to seek termination of the parental rights of both Saenz and Perez.

FACTUAL SUFFICIENCY
Both Saenz and Perez challenge the factual sufficiency of the evidence to prove the statutory termination grounds by clear and convincing evidence. They also argue that the evidence is factually insufficient to prove by clear and convincing evidence *432 that termination was in the best interest of the children. We will address their arguments individually but the same standard of review applies to all of the issues raised on appeal.

Termination under Section 161.001
In proceedings to terminate the parent-child relationship, the petitioner must establish by clear and convincing evidence one or more of the acts or omissions enumerated under subsection (1) of the statute and must also prove that termination is in the best interest of the child. Tex.Fam.Code Ann. § 161.001(1), (2)(Vernon 2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. Texas Department of Human Services. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).

Standard of Review
Due process requires the application of the clear and convincing evidence standard in cases involving the termination of parental rights. In the Interest of J.F.C., A.B.C., and M.B.C., 96 S.W.3d 256, 263 (Tex.2002), citing Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Codifying the constitutional requirement, the Family Code provides that the burden of proof in termination cases is clear and convincing evidence. Tex.Fam.Code Ann. § 161.001(1), (2). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex.Fam.Code Ann. § 101.007 (Vernon 2002). This intermediate standard falls between preponderance of the evidence of ordinary civil proceedings and the reasonable doubt standard utilized in criminal proceedings. State v. Addington, 588 S.W.2d 569, 570 (Tex.1979).
Given this elevated burden of proof, the traditional legal and factual sufficiency standards of review are inadequate. J.F.C., 96 S.W.3d at 265; In the Interest of C.H., 89 S.W.3d 17, 25 (Tex.2002). The traditional legal sufficiency standard, which upholds a finding supported by anything more than a scintilla of evidence, is inadequate when proof by clear and convincing evidence is required. J.F.C., 96 S.W.3d at 264-65. Instead, review must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. Id. at 266. To give appropriate deference to the factfinder, the reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Consequently, a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but it doesn't require a court to disregard all evidence that does not support the finding. Id. at 266. If the court determines that no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true, then the evidence is legally insufficient.
In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. Id., citing In Re C.H., 89 S.W.3d at 25. The inquiry must be whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of *433 its finding. While we do not view the evidence in the light most favorable to the challenged finding, our review must maintain the respective constitutional roles of juries and appellate courts. Id. at 26. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. J.F.C. 96 S.W.3d at 266.

Termination of Saenz' Parental Rights

The Findings
The trial court found by clear and convincing evidence that termination Saenz' parental rights was in the children's best interest. Additionally, the court found by clear and convincing evidence that Saenz:
1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;[4]
2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;[5]
3. contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261, Texas Family Code;[6]
4. constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment;[7]
5. failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children;[8] and
6. used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance.[9]

Waiver
In her first three issues, Saenz attacks only three of the six grounds for termination found by the trial court (numbers 1, 2, and 4 above). Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *434 In re A.V., 113 S.W.3d 355, 362 (Tex.2003); In re S.F., 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.). Because any of the three unchallenged findings will support the order of termination, it is unnecessary to review Saenz's factual sufficiency arguments. Issues One, Two, and Three are overruled.

Best Interest
In deciding whether the evidence is sufficient to support the trial court's finding that termination is in the children's best interest, we apply the non-exclusive factors found in Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). See also In re Jane Doe 2, 19 S.W.3d 278, 282 n. 20 (Tex.2000)(recognizing that intermediate courts employ the Holley factors to ascertain best interest in conservatorship cases). Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the plans for the child by these individuals; (6) the stability of the home; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. See Holley, 544 S.W.2d at 371-72.
Neither of the children wants to live with Saenz. A.J.P. does not remember Saenz and instead thinks of her foster parent as her mother. Both children recalled the violence inflicted on the family by Urbieta. O.P. was sometimes heard by his foster parent to pray that A.J.P. would forget the family they had before. When O.P. initially went into foster care, he had low self-esteem, anxiety, and depression. He was sometimes violent and aggressive and had expressed suicidal desires. A.J.P. would not talk during therapy sessions unless O.P. was present. Both children are thriving in foster care. O.P. now feels safe in his home environment, is happy, and has improved significantly. Over time, A.J.P. has become less anxious and is able to separate from her foster mother. In order to continue to progress, A.J.P. would need a safe environment where she felt her needs would be met and she would be nurtured. Saenz was not able to provide a stable environment while the children lived with her nor has she made any strides toward being able to do so. She has not provided any financial support for the children nor has she visited them on a regular basis. Her continued drug usage and outright refusal to participate in services offered her, even in the face of a court order, demonstrate her inability to provide a stable environment for the children. Further, Saenz's drug use and continued relationship with Urbieta endanger both children. Saenz has not expressed any permanent plans for the children's future. The foster parent is not able to adopt them or provide a permanent home but she is able to care for them until a permanent home is found. Saenz did not offer any excuses for her acts and omissions. Based upon our review of all of the evidence, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of the parent-child relationship between Saenz and the children is in the children's best interest. Saenz' fourth issue is overruled.

Termination of Perez' Parental Rights

The Findings
The trial court found by clear and convincing evidence that termination of Perez's parental rights is in the children's best interest. Additionally, the court found by clear and convincing evidence that Perez:

*435 1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;[10]
2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;[11] and
3. constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the father; (2) the father has not regularly visited or maintained significant contact with the children; and (3) the father has demonstrated an inability to provide the children with a safe environment.[12]

Sections 161.001(1)(D) and (E)
We first review the evidence supporting the trial court's findings that Perez had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children and that he engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the childrens' physical or emotional well-being. See Tex.Fam.Code Ann. § 161.001(1)(D), (E). Both subsections (D) and (E) require proof of endangerment, which means to expose to loss or injury, or to jeopardize a child's emotional or physical health. Boyd, 727 S.W.2d at 533; Doyle v. The Texas Department of Protective and Regulatory Services, 16 S.W.3d 390, 394 (Tex.App.-El Paso 2000, pet. denied). While endangerment means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. Doyle, 16 S.W.3d at 394. Subsections (D) and (E) differ in one respect: the source of the physical or emotional endangerment to the child. See In the Interest of B.S.T., 977 S.W.2d 481, 484 (Tex.App.-Houston [14th Dist.] 1998, no pet.); In the Interest of S.H.A., 728 S.W.2d 73, 83-84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. Doyle, 16 S.W.3d at 394. This provision addresses the child's surroundings and environment rather than parental misconduct, which is the subject of subsection (E). Doyle, 16 S.W.3d at 394; B.S.T., 977 S.W.2d at 484; S.H.A., 728 S.W.2d at 84. Under subsection (E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. Doyle, 16 S.W.3d at 395; B.S.T., 977 S.W.2d at 484; S.H.A., 728 S.W.2d at 83-84.

ENVIRONMENTAL ENDANGERMENT
Conduct of a parent or another person in the home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D). In the Interest of W.S., 899 S.W.2d 772, 776 (Tex.App.-Fort Worth 1995, no writ); D.O. v. Texas Department of Human Services, 851 S.W.2d 351, 354-55 (Tex.App.-Austin *436 1993, no writ); In the Matter of B.R., 822 S.W.2d 103, 105-06 (Tex.App.-Tyler 1991, writ denied). For example, an environment which routinely subjects a child to the probability that he will be left alone because his parents or caregivers are incarcerated endangers both the physical and emotional well-being of a child. See In the Interest of S.D., 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied)(parents repeatedly jailed due to illegal drug use and drug-related criminal activity).

ENDANGERMENT BY PARENTAL ACT OR OMISSION
Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the result of the parent's conduct, including acts and omissions. In the Interest of R.D., 955 S.W.2d 364, 368 (Tex.App.-San Antonio 1997, pet. denied); Dupree v. Texas Department of Protective & Regulatory Services, 907 S.W.2d 81, 83-84 (Tex.App.-Dallas 1995, no writ). The conduct to be examined includes what the parents did both before and after the child was born. In the Interest of D.M., 58 S.W.3d 801, 812 (Tex.App.-Fort Worth 2001, no pet.); Dupree, 907 S.W.2d at 84. To be relevant, the conduct does not have to have been directed at the child, nor must actual harm result to the child from the conduct. Dupree, 907 S.W.2d at 84; In re C.D., 664 S.W.2d 851, 853 (Tex.App.-Fort Worth 1984, no writ). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. Tex.Fam.Code Ann. § 161.001(1)(E); In the Interest of K.M.M., 993 S.W.2d 225, 228 (Tex.App.-Eastland 1999, no pet.). The specific danger to the child's well-being need not be established as an independent proposition, but may be inferred from parental misconduct. In the Interest of N.K., 99 S.W.3d 295, 300 (Tex.App.-Texarkana 2003, no pet.).
Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct as well. Dupree, 907 S.W.2d at 84. While a parent's incarceration, standing alone, will not prove endangerment under subsection (E), it is a factor for consideration by the trial court on the issue of endangerment. Boyd, 727 S.W.2d at 533-34; In re M.D.S., 1 S.W.3d 190, 199 (Tex.App.-Amarillo 1999, no pet.). If the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under subsection (E) is supportable. Boyd, 727 S.W.2d at 534 (citing to prior version of the statute); M.D.S., 1 S.W.3d at 199.

The Evidence
We will review the evidence pertaining to subsections (D) and (E) together. Perez drank heavily and ingested large amounts of cocaine while he lived with the family. At trial, Perez claimed that he no longer abused drugs but there is no evidence that he does not continue to drink. He also abused Saenz physically in the presence of the children. Violent or negligent conduct directed at the other parent may be sufficient to demonstrate a course of conduct under Subsection (E). See In re B.R., 950 S.W.2d 113, 119 (Tex.App.-El Paso 1997, no writ). Further, abusive or violent conduct in the home can create an environment that endangers the physical or emotional well-being of the child. See In re J.T.G., 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). Perez has been convicted of one felony and two misdemeanors and has been incarcerated *437 at various times since O.P.'s birth. He admitted at trial that he did not remember committing the criminal mischief or being arrested due to his level of intoxication. As a result of those convictions, he has been deported three different times and most recently ordered out of the United States for twenty years. As a result of his alcohol abuse, substance abuse, voluntary criminal conduct and resulting incarceration and deportation, Perez has not been able to provide a stable or safe environment for the children. The summarized evidence is factually sufficient for a reasonable trier of fact to form a firm belief or conviction that Perez knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. Likewise, the evidence is factually sufficient to support the finding that Perez had engaged in conduct or had knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being. The first three issues are overruled.

Best Interest
We now examine the factual sufficiency of the evidence to support the court's determination that termination of Perez' parental rights is in the best interest of the children. On one occasion during a therapy session, O.P. expressed an interest in living with his father because he recalled that Perez had given him a gift. A.J.P. did not express any desire to live with her father. Perez did not have any contact with the children for several years and there is no evidence that he could provide a stable or permanent home for the children. He remained in Juarez, despite having no job, and he lived in what he termed a cheap hotel. Perez failed to return to Torreon so that a home study could be completed and he offered no plans for the children's future. The evidence is undisputed that the children, who are now thriving in foster care, had suffered emotionally and psychologically as a result of the environment in which they had lived with Perez and Saenz, and then with Saenz and Urbieta. Perez offered no excuse for his conduct. Based upon our review of all of the evidence, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of the parent-child relationship between Perez and the children is in the children's best interest. The fourth issue is overruled. Having overruled the issues for review presented by each parent, we affirm the judgment of the trial court.
NOTES
[1] The original and first amended petitions refer to Perez as Antero Perez. The judgment refers to him as Antero Perez a.k.a. Antero P. Gonzalez. Perez filed an affidavit of paternity showing his name as Antero Perez-Gonzalez, but this notice of appeal states his name as Antero Perez-Gutierrez. Our opinion will show Perez's name as it is stated in the judgment, Antero Perez a.k.a. Antero P. Gonzalez.
[2] Effective September 1, 2003, the Legislature changed the name of the Department to the Texas Department of Family and Protective Services. 78th Leg., R.S., ch. 198, § 1.01, 2003 Tex.Gen.Laws 611.
[3] Perez attended the final hearing through the cooperation of the trial court and the Mexican consulate.
[4] See Tex.Fam.Code Ann. § 161.001(1)(D).
[5] See Tex.Fam.Code Ann. § 161.001(1)(E).
[6] See Tex.Fam.Code Ann. § 161.001(1)(I).
[7] See Tex.Fam.Code Ann. § 161.001(1)(N).
[8] See Tex.Fam.Code Ann. § 161.001(1)(O).
[9] See Tex.Fam.Code Ann. § 161.001(1)(P).
[10] See Tex.Fam.Code Ann. § 161.001(1)(D).
[11] See Tex.Fam.Code Ann. § 161.001(1)(E).
[12] See Tex.Fam.Code Ann. § 161.001(1)(N).