**Affirmed and Memorandum Opinion filed December 15, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00601-CV

## IN THE INTEREST OF N.S., A Child

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2014-03294J**

# M E M O R A N D U M   O P I N I O N

J.S.S. ("the mother") appeals the trial court's judgment terminating her parental rights to her son, N.S.[1] We affirm.

The Department moved for termination of the mother's parental rights. *See* Tex. Fam. Code Ann. § 161.001. The matter was called to trial and the mother failed to appear, but she was represented by counsel. The trial court heard evidence and subsequently terminated the mother's parental rights on the grounds that she (1) knowingly placed or allowed N.S. to remain in conditions or surroundings

---

[1] G.E.S., the father of N.S., died in August 2005.

which endangered his physical or emotional well-being (section 161.001(1)(D)); (2) engaged in conduct or knowingly placed N.S. with persons who engaged in conduct which endangered his physical or emotional well-being (section 161.001(1)(E)); (3) constructively abandoned N.S. (section 161.001(1)(N)); and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for the return of N.S. (section 161.001(1)(O)). The trial court also determined that it is in the best interest of N.S. to terminate the mother's parental rights (section 161.001(2)). *Id*. §§ 161.001(1)(D), (E) & (O); 161.001(2). On appeal, the mother concedes the evidence is legally and factually sufficient to support the trial court's judgment on one of the four statutory grounds for termination. *See id*. § 161.001(1)(O). However, she challenges the trial court's decision that termination is in the best interest of N.S. *See id*. § 161.001(2).

## A. Burden of Proof and Standards of Review

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. *Id*. § 161.001(1), (2); *In re J.O.A*., 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (West 2014); *In re C.H*., 89 S.W.3d 17, 25–26 (Tex. 2002). This heightened burden of proof results in a heightened standard of review. *In re C.H.*, 89 S.W.3d at 26 ("[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."); *see also In re C.M.C.,* 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In a legal-sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id*. If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual-sufficiency review, we give due consideration to evidence the factfinder reasonably could have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id.*

### B. The Evidence

N.S. was eight years old in September 2013 when the Department received a referral that the mother was abusing pills and alcohol in the home while he was present. It was reported that the mother was taking eight to ten Xanax pills a day and drinking alcohol at the same time. The mother was visiting different emergency rooms approximately every other week to obtain more pills. On at least one occasion, the mother tried to find a syringe in order to inject Dilaudid and

needle caps had been seen on the floor of the home. The report stated that when the mother was under the influence of the pills, she went in and out of consciousness. The home was dirty and cluttered, the mother did not wash dishes, and there were clothes and food everywhere in the house.

The mother brought men involved in drug use or distribution into the home with N.S. while she was under community supervision, the terms of which included avoiding persons of disreputable and harmful character.[2] The mother was going to allow "Tommy"[3] to live in her home, along with N.S. Tommy was convicted in January 2014 of selling methamphetamine and sentenced to imprisonment for six months. The mother refused to remove her boyfriend, A.G., from the home despite his having been arrested more than 20 times, including an arrest for possession and delivery of a controlled substance. In January 2014, while this case was pending, A.G. pled guilty to delivery of methamphetamine and was sentenced to imprisonment for 180 days. The mother acted as A.G.'s attorney and therefore was aware of the criminal charges and conviction. In September 2014, A.G. pled guilty again to possession of methamphetamine and was sentenced to imprisonment for 200 days.

In June 2014, the Department conducted a home visit and the mother appeared to be under the influence of an unknown substance. The mother refused Family Based Safety Services, causing the Department to seek custody of N.S. In June 2013, the Department was named temporary managing conservator.

---

[2] The mother was under community supervision for the offense of tampering with a government record. The conviction was subsequently reversed and a judgment of acquittal rendered, *see Siegel v. State*, 09-13-00536-CR, 2015 WL 3897860 (Tex. App.—Beaumont June 24, 2015), pet. ref'd Nov. 25, 2015, but at the time of the referral the mother's behavior exposed her to the risk of incarceration.

[3] We identify this person by pseudonym as "Tommy."

On June 24, 2014, the mother tested positive for methamphetamine, amphetamine, benzodiazepines and marijuana. A.G. testified positive for methamphetamine, amphetamine and marijuana.

Trial was held May 21, 2015. The mother failed to appear. When the case was called to trial, the caseworker informed the court that the mother had not visited or called N.S. since the beginning of March.

T.S., an older sister of N.S., testified that N.S. had been living with her and her husband since July 2014 and was thriving. N.S. was doing well in school, was involved in sports, and his grades had improved. T.S. wanted to adopt her brother. T.S. testified that she had not had any contact with her mother since March 15, 2015. T.S. believed her mother was with A.G. and, in her opinion, in a worse situation than when the case began.

The caseworker, M. Waters, testified the mother had not completed her family service plan. He admitted that she had been doing well but after she went missing the agency changed its goal to termination of her parental rights. The mother had tested negative for drugs while in rehabilitation, from September 2014 to January 2015. The mother claimed she had completed the parenting class and counseling but was unable to provide any documentation. The record does reflect the mother completed individual counseling in the Substance Abuse Services Program in February 2015. Further, the record demonstrates the mother was employed from October 12th through the 22nd of 2014, and was employed in January and February of 2015. However, Waters testified that the mother's employer advised him that her employment had been terminated. The employer further advised Waters that he had been paying for her to see a psychiatrist, he was purchasing medications for her, and had paid her first month's rent at an apartment. According to the employer, the mother had not been able to maintain payment and

he had been called to retrieve her possessions because she was being evicted. The employer had not heard from the mother. Waters testified it was in the best interest of N.S. for the mother's parental rights to be terminated so he could be adopted by T.S.

The child advocate, D. Culver, had not had any contact from the mother and the phone numbers the mother had provided were not working numbers. Culver testified that she was satisfied with the placement of N.S. with his sister and felt the goal of relative adoption was appropriate and in his best interest. The attorney ad litem further advised that N.S. requested the parental rights be terminated and he be made available for adoption by his sister.

### C. Statutory Grounds

The mother concedes the legal and factual sufficiency of the evidence to support termination of her parental rights under subsection (O). Because the judgment could be upheld on this unchallenged ground, we uphold the judgment concerning the statutory grounds for termination and do not address the mother's arguments as to (D), (E) or (N). *See Fletcher v. Dep't of Family & Protective Servs.,* 277 S.W.3d 58, 64 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 433–34 (Tex. App.—El Paso 2004, no pet.)). *See also Conti v. Texas Dept. of Family & Protective Services,* 01-10-00185-CV, 2011 WL 286143, at *4 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, pet. denied) (mem. op.). Accordingly, we overrule the mother's first and second issues.

**D. Best Interest of the Child**

In her third issue, the mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of N.S. The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). *See also In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), and Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). A finding in support of "best interest" does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley,* 544 S.W.2d at 371–72.

We begin with the presumption that the best interest of the child is served by keeping him with his natural parent. *See In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The burden is on the Department to rebut that presumption. *See In re U.P.*, 105 S.W.3d at 230. We also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West 2014).

**1. Needs of and Danger to the Child**

With regard to N.S.'s present and future emotional and physical needs, and the present and future emotional and physical danger to N.S., the record reflects the mother used drugs before and after N.S. came into the Department's care. The mother continued to live with A.G., although she was aware that he was charged with and pled guilty to a drug offense, while this case was pending. Accordingly, this factor weighs in favor of the trial court's finding.

**2. Stability and Compliance with Services**

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The caseworker testified the mother failed to successfully complete her family plan of service. The record does not establish the mother obtained stable employment or housing and as of the date of trial had been out of contact with the Department, her attorney, N.S., and T.S. for at least three months. We therefore conclude this factor weighs in favor of the trial court's finding.

**3. Child's Desires and Proposed Placement**

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.,* 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.,* 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement

of the child is relevant to the best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

The attorney for N.S. informed the trial court that N.S. had expressed his desire to be adopted by T.S. and for his mother's parental rights to be terminated. It was the testimony of T.S. and the caseworker that N.S. is doing well in his current placement. T.S. testified that she wants to adopt N.S. and Waters and Culver testified that adoption by T.S. was in his best interest. This factor weighs in favor of the trial court's finding.

### 4. Parenting Abilities and Family Support

The record does not reflect the mother's parenting abilities. During the pendency of this case, the mother chose to remain with A.G. and cut off all contact with N.S. and T.S., both of whom favor termination of her parental rights. Accordingly, this factor also weighs in favor of the trial court's finding.

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of the mother's rights is in the best interest of N.S. *See In re S.B.,* 207 S.W.3d 877, 887–88 (Tex. App.–Fort Worth 2006, no pet.) (considering the parent's drug use, inability to provide a stable home, and failure to comply with a family service plan in holding the evidence supported the best-interest finding). Based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating the mother's rights was in the best interest of N.S. so that he could promptly achieve permanency through adoption by a family member. *See In re T.G.R.–M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Therefore, we overrule the mother's third issue and affirm the trial court's judgment terminating her parental rights to N.S.

The judgment of the trial court is affirmed.


/s/    John Donovan
        Justice


Panel consists of Justices Jamison, Donovan, and Brown.