

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00038-CV

IN THE INTEREST OF S.J., A CHILD

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 292-24

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

Mother appeals the trial court's order terminating her parental rights to her child, S.J., who was removed as a newborn by the Texas Department of Family and Protective Services.[1,2] The trial court found that the Department had proved five statutory grounds allowing termination, under subsections D (endangering conditions or surroundings), E (endangering conduct), N (constructive abandonment), O (failure to comply with service plan), P (endangering use of controlled substance), and R (child born addicted to controlled substance). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P), (R) (Supp.). The trial court also found termination to be in S.J.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (Supp.). Mother argues that the evidence is legally and factually insufficient to support all the alleged grounds for termination. Mother asserts that the Department's allegations of drug use against her are conclusory because "no positive drug test for the mother from any point in the case was admitted into evidence."

On accelerated review,[3] we find that legally and factually sufficient evidence supports the trial court's termination under ground E. Among other things, Mother failed to comply with the testing requirements of a court-approved family service plan that specifically mentioned

---

[1]We use initials, pseudonyms, or descriptive terms such as Mother and Father to protect the identity of the child. *See* TEX. FAM. CODE ANN. § 109.002(d) (Supp.); TEX. R. APP. P. 9.8.

[2]Father's parental rights were also terminated in the same proceeding, but he did not appeal the judgment.

[3]*See* TEX. FAM. CODE ANN. § 263.405; TEX. R. APP. P. 28.4; TEX. R. JUD. ADMIN. 6.2(a) (requiring appellate courts to dispose of appeal from a judgment terminating parental rights, "so far as reasonably possible," within 180 days after notice of appeal is filed); *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020) ("As we have long acknowledged, children's lives cannot be 'kept in limbo while judicial processes crawl forward[.]'" (alteration in original) (quoting *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003))).

2

methamphetamine. The trial court could reasonably consider the ongoing non-compliance as presumed positive tests for methamphetamine. Additionally, there was testimony regarding Mother's inconsistent history of visiting the child, as well as Mother's unstable employment and housing situation. Considering the aggregate weight of the evidence, we find that termination on the basis of ground E is supported.

We are required, however, to review the evidence regarding grounds D and E.

We find the evidence regarding ground D factually and legally insufficient. Ground D focuses on the conditions at or before removal. The testimony from the Department was brief. In a combined hearing regarding both Mother and Father, the Department's presentation of its contract caseworker consists of fourteen pages in the reporter's record or roughly seven pages per parent. Though the Department asserts that S.J. was born with methamphetamine in her system, the Department did not put into evidence a drug test to that effect.

Termination, however, may be upheld on a single statutory ground.

Therefore, based on the ground E finding, we affirm the trial court's judgment terminating Mother's parental rights.

## I.    Standard of Review

"'The natural right which exists between parents and their children is one of constitutional dimensions.'" *D.V. v. Tex. Dep't of Fam. & Protective Servs.*, 722 S.W.3d 854, 858 (Tex. 2025) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)). Consequently, "[p]arents . . . benefit from an otherwise-inapplicable elevated standard of appellate review." *Id.* (citing *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam)). "On appellate review, we are

tasked with 'undertak[ing] "an exacting review of the entire record with a healthy regard for the constitutional interests at stake.""" *In re C.C.*, 720 S.W.3d 41, 50 (Tex. App.—Texarkana 2025, no pet.) (alteration in original) (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002))). "[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25. Though both legal and factual sufficiency review deal with whether "a reasonable factfinder could form a firm belief or conviction," there is a difference between legal and factual sufficiency. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018).

For legal sufficiency, the review is as follows:

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

4

"The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d at 630. "In conducting a *legal*-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but must otherwise *assume the factfinder resolved disputed facts in favor of the finding*." *Id.* at 630–31 (emphasis added).[4]

By comparison, for factual sufficiency, the review is as follows:

> Factual sufficiency . . . *requires weighing disputed evidence contrary to the finding* against all the evidence favoring the finding. In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding. Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true.

*Id.* at 631 (emphasis added) (footnote omitted) (citation omitted).

Under this approach "[t]he assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so remains." *In re Commitment of Stoddard*, 619 S.W.3d 665, 674 (Tex. 2020).

> However, rather than "disregard[ing]" disputed evidence that a reasonable factfinder could not have credited in favor of the finding, the court must determine whether, in light of the entire record, that evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true.

*Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

---

[4]"Weighing *conflicting* evidence and inferences to determine whether a verdict should be vacated . . . is appropriately a part only of the reviewing court's factual sufficiency review[.]" *In re J.O.A.*, 283 S.W.3d 336, 347 (Tex. 2009) (emphasis added). That is not to say that legal sufficiency review is entirely devoid of weighing: "[d]isregarding *undisputed* facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence." *In re J.F.C.*, 96 S.W.3d at 266 (emphasis added).

"Reviewing courts . . . must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence." *In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024). "Such inferences must be reasonable and based on other facts proved." *Id.* "Our opinion does not render the clear-and-convincing-evidence standard toothless; instead, it properly defers credibility determinations to factfinders at the trial court level, who most closely interact with the witnesses." *Id.* at 279.

Generally, "[o]nly one predicate ground and a best interest finding are necessary for termination, so 'a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground.'" *In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d at 232). Grounds D and E deal with child endangerment. *In re R.R.A.*, 687 S.W.3d at 277.[5] Termination on grounds D or E "has consequences for termination of parental rights as to children in a future proceeding." *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam); *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (Supp.). Therefore, "due process and due course of law require that the court of appeals review the legal and factual sufficiency of the evidence supporting a trial court's order of termination under Subsections 161.001(b)(1)(D) and (E) when challenged on appeal." *In re M.P.*, 639 S.W.3d at 704; *see In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass [Mother's] evidentiary challenge*s* to Subsections (D) *and* (E), the so-called endangerment grounds." (emphasis added)).

---

[5]"A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being—the focus of grounds (D) and (E) . . . ." *In re R.R.A.*, 687 S.W.3d at 277.

Appellate review of termination on endangerment grounds must be conducted in a "holistic" fashion. *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024) (per curiam) (orig. proceeding) ("holistic endangerment review set forth in [*In re*] *R.R.A.*"). The approach to endangerment review set forth in *In re R.R.A.* is not limited to drug use. *In re N.L.S.*, No. 23-0965, 2025 WL 1687924, at *3 (Tex. June 13, 2025) (per curiam) ("Father argues that [*In re*] *R.R.A.* is limited to drug-use cases. That is incorrect.").

Consequently, we review endangerment findings considering the "aggregate weight" of factors supported by the evidence. *In re R.R.A.*, 687 S.W.3d at 281 (finding that termination on grounds D and E was supported by "the aggregate weight of Father's ongoing drug use, homelessness, employment instability, and near-complete abandonment of his children for the six months preceding trial").[6]

## II.     The Evidence at Trial

Mother failed to appear at the bench trial.[7] The combined termination hearing was relatively brief; the record of that hearing contains forty-one pages of testimony. The questions concerning the effect of Mother's drug use on her parenting ability take it as a given that Mother has a history of methamphetamine use.

Mother's sister, K.S., testified that it was her "understanding" that S.J. tested positive for "drugs" at birth. K.S. described a longstanding pattern of drug abuse by Mother, stating that all four of Mother's children were born exposed to drugs or left in others' care while Mother used

---

[6]This appears to be a reference to the "aggregate weight" when conducting *legal* sufficiency review; *In re R.R.A.* makes no mention of factual sufficiency. *Id.* at 281.

[7]Father did not appear for trial either.

drugs. K.S. further testified that Mother had "consistently left her children with other persons to raise them." K.S. also stated that "[Mother had] been doing this most of [their] life." Regarding Mother's pregnancy with S.J., though, K.S. testified that she did not have any conversations with Mother regarding her drug use until "[a]fter the fact," meaning "not while" Mother was pregnant with S.J. K.S. testified that Mother told her the subject was "none of [her] business."

Kim White, a caseworker with 4Kids4Families,[8] testified that the trial court ordered Mother to follow a service plan, which was reviewed with and signed by Mother, who understood its requirements. Mother did not complete any required services under that service plan. Mother never submitted to drug testing, despite being asked to do so every month. The testimony on that point, though brief, was direct:

> Q      [(BY THE DEPARTMENT:)] . . . [O]ne of the primary reasons for the removal was drugs in this case; is that correct?
>
> A      [(BY WHITE:)]      That is correct.
>
> Q      Did the mother -- did the mother regularly drug test as you required?
>
> A      She's never drug tested.
>
> Q      Did you ask her to drug test?
>
> A      Yes, ma'am, every month.
>
> Q      And each month she declined to do drug testing?
>
> A      Yes, ma'am.

---

[8]In accordance with a directive from the Texas Legislature, the Department contracted with 4Kids4Families to manage the conservatorship involved with the court proceedings. *See In re C.C.*, 720 S.W.3d at 61, n.26.

The service plan stated that a "failure to submit to [drug] testing, provide photo identification[,] or have a dilute negative drug screen w[ould] constitute a presumed positive drug test." White testified that she provided all the necessary referrals for the court-ordered drug assessment. White further testified that Mother's failure to submit to drug testing indicated that Mother was continuing to use, and therefore, S.J. would be in danger if she were returned to Mother.

Throughout the case, Mother lacked stable housing. At the time of trial, Mother's home was not safe or appropriate because she lived in a "big bus" without a bathroom. Mother did not have all the necessities for a baby. White testified that the bus could be dangerous for S.J. White testified that she believed Mother was continuing to use "drugs," and therefore there "could" be items on the bus that would pose a danger to S.J. Although Mother was not employed at the beginning of the case, White verified that Mother had worked since November 2024. Mother did not remain in contact with the Department. White testified that Mother's visitation was inconsistent with Mother canceling more than half of the visits. Mother never offered to assist K.S. financially with S.J.

White also testified to the Department's reasonable efforts for reunification, including holding a permanency conference, preparing service plans, making referrals for services, and setting up a visitation schedule.

Selena Tran, the Court Appointed Special Advocate (CASA) and the attorney ad litem for S.J., agreed that reunification would not be safe for S.J. and that termination of Mother's parental rights was in S.J.'s best interest.

9

## III. Findings Regarding the Statutory Termination Grounds

In her sole issue, Mother challenges the legal and factual sufficiency of the evidence to support termination under all grounds because the evidence adduced at trial was conclusory. Mother contends the outcome here is governed by cases such as *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted, does not amount to more than a scintilla of evidence."). We conclude that the trial court could reasonably form a firm belief or conviction that the Department had carried its burden of proof regarding ground E, but not ground D.

### A. Ground D

Ground D permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). "[T]ermination under (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024) (per curiam). "[T]he courts of appeals have held that the relevant time frame for evaluating this ground is before the child's removal 'since conditions or surroundings cannot endanger a child unless that child is exposed to them.'" *In re J.W.*, 645 S.W.3d at 749 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied)).

Drug use during pregnancy can support termination. *In re J.W.*, 645 S.W.3d at 733, 749 (holding a mother endangered her child when her child's meconium tested positive for opiates,

amphetamines, benzodiazepine, barbiturates, and methadone).[9] The type of drug used during pregnancy is a consideration. *See In re A.A.*, 670 S.W.3d 520, 530 (Tex. 2023) (noting that parental use of methamphetamine poses "an immediate danger" to child's physical health and safety).[10]

### 1. Analysis

The trial court terminated Mother's parental rights under ground D. Under the standard of review articulated above, we reverse this finding.

Mother urges that the evidence that she used methamphetamine while pregnant with S.J. is legally and factually insufficient because no actual drug tests were admitted into evidence at the final hearing. On this, Mother has a point. No drug tests were admitted into evidence. Mother further urges that the testimony at the final hearing about Mother's drug use was generic, using the catch-all term "drugs" without specifying whether Mother had used methamphetamine while pregnant.

---

[9] "[D]rug use during pregnancy constitutes conduct that endangers a child." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *4 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.); *In re S.Q.-M.B.*, No. 04-24-00296-CV, 2024 WL 3882144, at *2 (Tex. App.—San Antonio Aug. 21, 2024, no pet.) (mem. op.) (quoting *In re A.B.R.*, 2020 WL 1159043, at *4); *see In re B.F.*, No. 14-17-00421-CV, 2017 WL 5505821, at *7 (Tex. App.—Houston [14th Dist.] Nov. 16, 2017, no pet.) (mem. op.) ("It appears [the baby] has not suffered further medical effects. But the drug's mere presence in [the baby's] system harmed her, and the apparent lack of more damage does not diminish that harm."); *In re A.R.*, No. 06-20-00013-CV, 2020 WL 3865372, at *4 (Tex. App.—Texarkana July 9, 2020, no pet.) (mem. op.) (quoting *In re E.J.P.*, No. 06-04-00131-CV, 2005 WL 2138573, at *3 (Tex. App.—Texarkana Sept. 7, 2005, no pet.) (mem. op.)); *In re J.S.*, 675 S.W.3d 120, 129 (Tex. App.—Dallas 2023, op. on remand) (Mother's use of illegal drugs during pregnancy "endangers the physical and emotional well-being of the child.").

[10] *See In re E.D.*, 682 S.W.3d 595, 608–10 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("[Mother]'s drug use involves so-called hard drugs—cocaine and methamphetamine in particular—rather than less destructive ones."); *In re V.L.F.*, No. 14-18-00588-CV, 2018 WL 6614168, at *10 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (mem. op.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting. . . . Drug use and the imprisonments relating to it harm the physical and emotional well-being of a child." (citation omitted)).

K.S. testified to her "understanding" that S.J. was born positive for drugs. When K.S. raised the subject with Mother "[a]fter the fact," Mother told K.S. that it was "none of [her] business." White took the stand but did not testify directly to S.J. testing positive for methamphetamine at birth.

On appeal, the Department points to the removal petition and White's supporting affidavit to fill in the gaps of its brief and imprecise testimony. The Department, however, does not provide caselaw to support the use of the petition and removal affidavit in the manner the Department urges given the circumstances of this case.

Given scant testimony at trial, we find that it would not be reasonable to form a firm conviction or belief regarding the truth of the Department's allegations regarding ground D. Accordingly, we reverse the ground D finding.

## B.    Ground E

Ground E permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Ground E examines endangering conduct by the parent or others. *Id.* "[T]ermination under (E) requires that a parent's conduct endanger the child's physical or emotional well-being." *In re C.E.*, 687 S.W.3d at 310.

"[I]llegal drug use by a parent . . . supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.

App.—Fort Worth 2003, no pet.)); *see In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.). "[C]ontinued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct." *In re J.S.*, 675 S.W.3d at 129. "'Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct' by a parent sufficient to support a petition to terminate parental rights." *In re O.R.F.*, 417 S.W.3d at 38 (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)).

> A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under subsection (E) even if there is no direct evidence that the parent's drug use actually injured the child" "[b]ecause it exposes the child to the possibility that the parent may be impaired or imprisoned.

*Id.* (alteration in original) (quoting *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). "A factfinder may reasonably attach greater significance to the use of more destructive narcotics." *In re E.D.*, 682 S.W.3d at 608; *see In re A.A.*, 670 S.W.3d at 530.

### 1.    Analysis

Mother did not complete any court-ordered services under the service plan. *In re L.G.*, No. 06-18-00099-CV, 2020 WL 4229330, at *10 (Tex. App.—Texarkana July 24, 2020, no pet.) (mem. op.) ("We agree that failure to complete a court-ordered service plan may be relevant to an endangerment analysis under statutory ground (E), particularly when it is evidence of a continuing pattern of neglect or abuse that has endangered a child."). Even though the family

service plan ordered Mother to obtain safe and stable housing, Mother failed to obtain stable housing for the duration of the proceedings. Mother lived with Father in "a big bus" without bathrooms, consistent heat, or the necessities for a baby. White testified that those conditions were not safe and stable for a newborn—rather, those conditions would be dangerous for a newborn. Mother only attended less than half of her visitations. *See D.L.G. v. Tex. Dep't of Fam. & Protective Servs.*, Nos. 03-20-00314-CV & 03-20-00315-CV, 2020 WL 6789208, at *5 (Tex. App.—Austin Nov. 19, 2020, no pet.) (mem. op.) ("[A] parent's inconsistent participation in visitation can emotionally endanger a child's well-being, supporting termination under subsection (E) . . . ."); *In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *6 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) ("[A]ppellant's failure to attempt to visit [the child] for several months during the pendency of this case supports the trial court's finding of endangerment of [the child]'s emotional well-being.").

Further, Mother never complied with the Department's requests for drug testing or drug assessment—despite being requested to do so monthly. Mother had notice that remaining drug-free was required to get her child back because the family service plan required drug tests. White said that the family service plan included the provision that failure to submit to a drug test would be taken as a positive drug test.

It is apparent from those circumstances that Mother's continued drug use presented a risk to her "ability to parent." *See In re R.R.A.*, 687 S.W.3d at 278 (quoting *In re J.O.A.*, 283 S.W.3d at 345). "There was no disputed fact of significance to weigh against this proof that supported the fact finder's firm belief or conviction that Mother would have known her conduct

jeopardized reunification." *In re E.A.D.*, No. 14-22-00025-CV, 2022 WL 2663981, at *6 (Tex. App.—Houston [14th Dist.] July 11, 2022, no pet.) (mem. op.).

After an exacting review of the entire record, we find that the trial court could reasonably have formed a firm belief or conviction that the ground E finding was true under the legal, factual, and holistic review principles set forth above. After viewing all the evidence in the light most favorable to ground E findings, we conclude that the trial court could have formed a firm belief or conviction that the Department met its burden for terminating Mother's parental rights under statutory ground E. *See In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (per curiam). After performing an exacting review of the entire record, we determine that the record is factually sufficient to support the trial court's finding. *See In re A.B.*, 437 S.W.3d at 500.

Because we conclude that the evidence is legally and factually sufficient to support ground E, we do not address Mother's arguments that the evidence is legally and factually insufficient to support the trial court's finding on the remaining grounds. *See In re T.M.T.*, No. 14-18-00442-CV, 2018 WL 6053667, at *11 (Tex. App.—Houston [14th Dist.] Nov. 20, 2018, no pet.) (mem. op.); *In re L.E.S.*, 471 S.W.3d at 923; *In re N.G.*, 577 S.W.3d at 237; *In re C.E.*, 687 S.W.3d at 314.

Therefore, we overrule Mother's sole issue.

## IV.     Conclusion

We affirm the trial court's order terminating Mother's parental rights under ground E.[11] However, we reverse the trial court's order under ground D and modify the judgment accordingly.

Jeff Rambin
Justice

Date Submitted:     July 8, 2025
Date Decided:       January 21, 2026

---

[11]Because Mother does not challenge the trial court's best-interests finding, that finding is binding on appeal. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Because . . . [Appellant] does not challenge the . . . finding that termination was in [her] [child]'s best interest, we need not reach any other issues raised by [Appellant].").