

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

_____

No. 07-16-00188-CV
_____

IN THE INTEREST OF K.V., A CHILD

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 87,009-E; Honorable Doug Woodburn, Presiding

October 11, 2016

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, J.V., appeals the trial court's order terminating his parental rights to his daughter, K.V.[1]  By a sole issue, J.V. asserts the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in his daughter's best interest.  We affirm.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).  *See also* TEX. R. APP. P. 9.8(b).  The mother's parental rights were also terminated but she did not appeal.

BACKGROUND

When K.V. was only two months old, her medical checkup revealed serious malnourishment. She was diagnosed with failure to thrive and immediately hospitalized.[2] Her condition was reported to the Texas Department of Family and Protective Services. After an investigator for the Department assessed K.V.'s condition, the Department initiated emergency removal for medical neglect. K.V. was placed with foster parents.

During the investigator's visit to the hospital, J.V. yelled at her that no one was taking his child. He acted in an intimidating manner and hospital security was asked to be present. J.V. threatened to shoot everyone and was escorted out by security.

According to a psychologist's testimony, K.V.'s mother has a below-average IQ with cognitive impairments that prevent her from providing basic care for K.V., including proper feeding. J.V. has an IQ within the average range that does not impair his ability to care for K.V. He suffers from a seizure disorder that prevents him from obtaining a driver's license.

The psychologist testified that J.V. suffers from a personality disorder and depression. He has difficulty with social relationships and has a prior criminal history that includes a charge of aggravated assault with a deadly weapon against K.V.'s mother, for which he is currently on deferred adjudication community supervision. The psychologist opined that J.V. does not have the minimal skills necessary for providing quality care for K.V.

---

[2] K.V. also had a healed clavicle fracture. However, testimony did not rule out the possibility that the injury could have occurred during childbirth.

K.V.'s parents have had stable housing for approximately four years. However, they are both unemployed and their only source of income is the mother's social security disability payments. By his own admission, J.V. testified that the home is not suitable for K.V.—it is infested with bed bugs, roaches, spiders, and mice. Testimonial and photographic evidence established that there is no furniture in the house due to bed bug infestation. There is also a potential mold problem caused by the washing machine. A photograph was introduced into evidence that depicted an electrical outlet cover hanging from the wall with exposed wires.

After K.V.'s removal, the Department implemented a family service plan with a goal of family reunification that was explained to both parents. In addition to the customary requirements of a family service plan, J.V. was required to participate in and complete a Batterer and Intervention Prevention Program (BIPP) because of his violent conduct toward K.V.'s mother.[3] Bus passes were provided for both parents to get to and from their services.

The Department caseworker testified that J.V. completed most of his services and was cooperative and pleasant at the outset. He did not complete individual counseling sessions nor did he initiate BIPP. After the Department was finally able to locate some of J.V.'s relatives, a cousin of J.V.'s contacted the Department and arranged a visit with K.V. The visit went well and the relatives were evaluated for

---

[3] The program is substantial and spans twenty-six weeks, and the participant is expected to pay $25 for each class.

3

possible placement.[4]  Upon realizing that the Department's goal had changed to adoption by a relative, J.V. became uncooperative and hostile.

J.V. testified he was unable to complete his counseling sessions because of transportation issues.  The bus trip usually took three hours.  He had been previously employed as a cosmetologist but did not renew his license in 2007 because he was not interested in the field.  He has not had employment in years but testified he was seeking employment.  He conceded his home was not suitable for K.V. and acknowledged that placement with a relative was preferable.  However, he did not want his parental rights terminated.

Based on the evidence and recommendations, the trial court found that termination was in K.V.'s best interest.  TEX. FAM. CODE ANN. §161.001(b)(2) (West Supp. 2016).  The court also found that J.V. (1) knowingly placed or knowingly allowed K.V. to remain in conditions or surroundings that endangered her well-being, (2) engaged in conduct or knowingly placed K.V. with persons who engaged in conduct that endangered K.V.'s well-being, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of K.V.  *See id.* at § 161.001(b)(1)(D), (E), and (O).

Appellant's only challenge to termination of his parental rights is his complaint that the evidence is insufficient to support the trial court's best interest finding.  He does not challenge the statutory grounds for termination.  Under section 161.001(b)(1) of the Texas Family Code, those unchallenged findings are sufficient to support the trial

---

[4] At the time of the final hearing, the Department had yet to receive the results of the home study for J.V.'s cousin.

4

court's termination order if the court otherwise finds the termination to be in the child's best interest. *See Perez v. Texas Dep't of Protective and Regulatory Servs.*, 148 S.W.3d 427, 434 (Tex. App.—El Paso 2004, no pet.). *See also In re K.M.*, No. 07-16-00120-CV, 2016 Tex. App. LEXIS 6886, at *6 (Tex. App.—Amarillo June 29, 2016, no pet.) (mem. op.).

APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes (1) one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and (2) that termination of that relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2) (West Supp. 2016); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

Only one statutory ground is required to support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Although evidence presented may be relevant to both the statutory grounds for termination and best interest, each element must be established separately and proof of one element does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002).

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d at 26. The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does nothing more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We also consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

BEST INTEREST § 161.001(b)(2)

The Department was required to prove by clear and convincing evidence that termination of J.V.'s parental rights was in the child's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of J.V.'s parental rights was in the child's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a). A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. The Supreme Court has set out additional factors to consider when determining the best

7

interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). *See also* § 263.307(a) (prompt and permanent placement in a safe environment is presumed to be in a child's best interest).

At the time of the final hearing, K.V. was too young to express her desires. However, there was evidence that she was very bonded with her foster parents and had thrived under their care. J.V.'s cousin and extended family were also available to adopt

K.V. and care for her. J.V. testified he was not opposed to his family providing a suitable environment for K.V. and welcomed the opportunity for K.V. to know her grandfather and great-grandmother.[5]

J.V. acknowledged that some of the services he completed assisted him in caring for K.V. However, he did not complete all his services. He excused his failure to complete his services on the length of time that bus transportation took to get to some of his appointments. Additionally, his psychologist opined that J.V. did not have the minimal skills necessary to care for K.V.

Notwithstanding that J.V. had stable housing for over four years, he had no prospects for employment and had no resources to find a more suitable home that would not present a danger to K.V. He testified he was actively looking for employment and also looked at other housing but did not have any money for deposits.

There was no evidence to suggest that the parent-child relationship was not appropriate. There was testimony by the Department's witnesses that J.V. loved his only daughter. He testified about his desire to have a family. However, K.V.'s need for a permanent and stable home outweighed J.V.'s wishes. The Department had foster parents and relatives who were willing and able to adopt K.V. and meet her present emotional and physical needs. There was testimony that J.V. had extended family in south Texas who would provide support for K.V.

Additionally, the trial court's unchallenged predicate findings are probative evidence of the best interest finding. *In re E.C.R.*, 402 S.W.3d at 249-50. J.V. had a

---

[5] J.V.'s family lives in south Texas near McAllen.

criminal history involving violence toward K.V.'s mother. He conceded that his living environment was not suitable for K.V. The bed bugs, roaches, mice, and pesticide for treating bed bugs endangered K.V.'s well-being. Having considered the *Holley* factors and the need for prompt and permanent placement, we conclude there was clear and convincing evidence to support the trial court's finding that termination of the parent-child relationship between J.V. and K.V. was in K.V.'s best interest. J.V.'s sole issue is overruled.

CONCLUSION

The trial court's order terminating J.V.'s parental rights to K.V. is affirmed.


Patrick A. Pirtle
Justice