In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00294-CV**
_____

**IN THE INTEREST OF J.S., ET AL**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-235,684**

## MEMORANDUM OPINION

In a bench trial, the trial court terminated Vivian's parental rights as to her children Jason, Jake, Amy, Allison, and Angie (the children).[1] The trial court also terminated father Andrew's parental rights as to his daughter, Angie, and terminated father James's parental rights to the other four children.[2] Vivian argues the evidence

---

[1] To protect the identities of the minors, we use pseudonyms to refer to them and their parents. *See* Tex. R. App. P. 9.8(b)(2). At the time of the termination order, Jason was sixteen years old, Jake was fourteen years old, Amy was nine years old, Allison was five years old, and Angie was three years old. Vivian has ten children, but the termination order in this case only pertains to five of them, and the other five are adults.

[2] James is not a party to this appeal, and we include limited details about him only as necessary to explain the facts.

is legally and factually insufficient to support the findings she endangered her children, violated the court-ordered family service plan, and that termination of her parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O), (2). Andrew's counsel filed a brief in which he concluded that there does not appear to have been any error, preserved or otherwise, that occurred which would necessitate or support a successful appeal of the trial court's findings. *See Anders v. California*, 386 U.S. 738 (1967); *see also In re L.D.T.*, 161 S.W.3d 728, 731 (Tex. App.—Beaumont 2005, no pet.) (holding that *Anders* procedures apply in parental-rights termination cases).

## Background

On August 13, 2019, the Department of Family and Protective Services ("Department") filed an Original Petition for Protection of a Child, for Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship. The petition named Jason, Jake, Amy, Allison, and Angie as the subjects of the suit, Vivian as the children's mother, and Andrew and James as the alleged fathers of the children.

The petition was supported by an affidavit by a Child Protective Services (CPS) worker and representative of the Department, and the affidavit stated that, on

2

June 13, 2019, the Department received a report of physical neglect and neglectful supervision of the children.[3] According to the affidavit,

> [i]t was reported [Vivian] was locking her sons out of their home overnight without assuring they had a stable place to stay. There were concerns of the home being "filthy". It's also reported [Vivian] was verbally aggressive and making verbal threats to her daughters.

The affidavit states that after the Department investigated the next day, the Department determined that Vivian's children did not make an outcry of abuse or neglect and the living conditions were not filthy or unsafe. According to the affidavit, Vivian reported to the Department that she no longer was receiving disability benefits, she no longer had any income, and she was having financial difficulties. The Department helped her seek rental assistance and to obtain necessities for the family. The next month, Vivian notified Department staff that she was being evicted from her public housing on August 1, 2019, and she had been denied an appeal of her eviction. According to the affidavit, the family stayed with relatives after their eviction but left that home "due to conflict[.]" Vivian and the Department tried to find temporary housing with relatives, but they were not willing to provide it for Vivian and the children. According to the affidavit, Vivian also was refused re-entry into local family shelters due to her previous behavior. The affidavit stated that

---

[3] In addition to the children the subject of this suit, the affidavit related to another of Vivian's children who was then determined by the Department to reside with his father, whose rights were not terminated in this suit and who has primary custody of that child.

Vivian no longer had housing for her children, did not have the funds to remain in a motel, and had not received additional community resources to cover her motel costs. The Department requested that the court name the Department as temporary managing conservator of the children due to Vivian's inability to provide a stable living environment for the children. On August 13, 2019, the Department was named temporary sole managing conservator of the children.

Evidence and Findings at Trial

<u>Testimony of the Department Caseworker</u>

The Department Caseworker testified that she was assigned the case after the Department received a referral of physical neglect and neglectful supervision of the children. According to the Caseworker, the Department had concerns because Vivian

> was locking the older boys outside and fail[ing] to make sure they were safe and had somewhere to stay and that there was suspected abuse of the girls and further along down the line of the case [Vivian] no longer had housing and she was placed with a relative.
>     However, that did not work out and she was placed in a motel room where . . . a third party paid for the cost for her to stay there and it eventually . . . came to an end and . . . she no longer had housing.

The Caseworker clarified that an investigation revealed that the children were not locked out and had food, there was no outcry of abuse, but that Vivian was going to lose her home.

4

The Caseworker testified that at the time of trial Jason was temporarily placed at an emergency shelter for ninety days after he was unwilling to stay at a "nice foster home [] geared for boys with specialized behaviors." According to the Caseworker, there was no immediate plan for Jason's placement and the Department was trying to "gradually [] get him used to other families." The Caseworker explained that Jake is doing well at his foster home but cannot be placed with his sister, Amy, because there had been a recent outcry of sexual abuse by Jake against her. As for Amy, Allison, and Angie, one of Vivian's cousins had been approved by the Department as a placement for the girls and was willing to take them and eventually adopt them.

The Caseworker agreed that a lot of the problems Vivian had securing housing were because she was "verbally irate[.]" According to the Caseworker, Vivian was evicted from her home in public housing due to her behavior, and the Department was unable to relocate the family to a shelter in another city or county because she was refused reentry into those shelters because of her prior behavior. Vivian also had stayed with family members but there was conflict there as well. The Caseworker testified that although Vivian maintained contact with her throughout the case, Vivian "was very confrontational every time she would talk."

The Caseworker testified that she developed a family plan for Vivian to complete and the Caseworker went over it with Vivian. The court-ordered family

5

plan was admitted into evidence at trial, and the Caseworker testified that there was no reason Vivian would not have understood the services and tasks that the Department was asking her to complete to achieve family reunification.

According to the Caseworker, the family plan required Vivian to provide appropriate housing for the children, maintain and provide proof of employment, provide a safe and drug-free environment for the children, take parenting classes and provide a certificate of completion and a written statement regarding the weekly discussions of the parenting courses, attend Narcotics Anonymous/Alcoholics Anonymous meetings twice weekly and provide proof of attendance, complete a drug assessment and psychological evaluation, submit to random drug testing, and follow up with primary care physician to address medical issues.

At the time of trial, the Caseworker testified that Vivian had secured stable suitable housing for approximately the past nine months, and she had provided proof of her lease as required by her family plan. The Caseworker testified that Vivian was able to get her Social Security Disability Income reinstated for a heart condition, and at the time of trial she had been employed at a grocery store for approximately a month. Prior to that, Vivian had not had any long-term, full-time employment. The Caseworker testified that Vivian had not provided proof of her employment as required by her family plan.

According to the Caseworker, drug use in the home was still a concern as Vivian had tested positive as recently as the month before trial. She tested positive for drugs on some of the required random drug tests, and on some occasions failed to submit to the random drug tests, and the Caseworker had informed Vivian that if she failed to appear for a test, it would be deemed as a positive drug test. Vivian's alcohol and drug testing results were admitted into evidence. According to the Caseworker, the results show Vivian tested positive for marijuana and cocaine on May 27, 2020, and tested positive for marijuana on July 21, 2020, and September 22, 2020. On October 28, 2020, and November 6, 2020, and November 10, 2020, Vivian submitted to drug tests and tested negative. The Caseworker testified that there was a concern with the oldest two children and drug use because the boys had admitted to the Caseworker that they would get their marijuana from their mother or oldest brother, but because the boys were not in Vivian's care, their access to drugs was no longer a concern. The Caseworker explained that in the beginning of the case, visits between Vivian and the children were suspended by the court "due to [Vivian's] behavior, the boys having access to marijuana and there was also an incident that took place in October of 2019 where [Vivian] became very irate at a local McDonald's[.]" According to the Caseworker, visits were reinstated just weeks before the trial. The Caseworker testified that Vivian was compliant in the beginning with sending in her proof of attendance at AA/NA meetings, but then Vivian became

7

non-compliant with that requirement of her family plan. Although Vivian did provide a letter from her doctor documenting her congestive heart failure diagnosis, Vivian never provided the Caseworker proof that Vivian followed up with her primary care physician as required by her family plan.

The Caseworker testified that Vivian completed the drug assessment required by her service plan, and the drug assessment was admitted into evidence. According to Vivian's counseling records that were admitted into evidence, her drug of choice was marijuana, which she began smoking when she was thirteen years old and that she has used marijuana "on-again/off-again" since then. The counseling records also revealed that Vivian denied cocaine and other illegal drug use and stated that she did not understand why she would test positive for cocaine. According to the Caseworker, Vivian stated that she is not willing to give up marijuana and she does not believe she has a problem with marijuana. The Caseworker testified that Vivian admitted using larger amounts of alcohol or drugs longer than she intended, and that drugs or alcohol has kept her from doing work, going to school, and caring for the children. The Caseworker also testified that Vivian has admitted that alcohol or drug use has caused an accident or became a danger to her or others and caused problems with family, friends, work, or the police. As a result of the drug assessment, Vivian was referred to an outpatient program that she completed, but she was readmitted into the program because of unsuccessful discharge.

8

The Caseworker testified that Vivian failed to complete and return health, social, education, and genetic history paperwork as required by her family plan. The Caseworker explained that although Vivian had attended and successfully completed her parenting classes, she was not in compliance with her family plan because she was unable to demonstrate what she had learned from the classes as required by her plan. According to the Caseworker, Vivian did submit to a psychological evaluation, and during the evaluation she admitted her children were involved in making synthetic drugs. She also reported symptoms of bipolar disorder as well as manic phase, elevation in mood, and irritability. The Caseworker testified that Vivian had never sought treatment for these problems, and the recommendation from the psychological evaluation recommended Vivian receive continued psychological and psychiatric health care, medication management, and individual outpatient psychotherapy. Vivian did not follow those recommendations. The Caseworker testified that after Vivian had another mental health evaluation by a different facility, no recommendations were made, which the Caseworker believed was due to Vivian not being truthful and not providing accurate information. According to the Caseworker, Vivian's failure to be truthful and provide accurate information has been an issue throughout the case.

The Caseworker testified that the Department had to seek writs of attachments from the court on more than one occasion because the two oldest children, Jason and

Jake, would run away from their placement and go to their adult older sister's home or to Vivian's house. According to the Caseworker, Vivian was not initially cooperative with the Department in trying to locate the boys when they ran away, but once the Department explained to her that her failure to communicate with the Department would be a "stumbling block in the case," Vivian "started helping [the Department] advocate to find and locate the boys." The Caseworker testified that it was concerning when the boys would run away from their placement to Vivian's because at the time Vivian was testing positive for drugs and would not notify the authorities when the boys would run away to her house. It also concerned the Caseworker when Jason and Jake would run away to their adult sister's house because it would be weeks before she would notify the Department of the boys' whereabouts. According to the Caseworker, once Vivian's visitation with the children was reinstated the visits were appropriate, but Vivian never provided the children with any sort of necessities or non-necessities during more than a year when they were in the Department's care.

The Caseworker testified that she believed termination of Vivian's parental rights is in the children's best interest. According to the Caseworker, the children have an opportunity to thrive but if they are placed back with Vivian, they "would be subject to the same trauma again." The Caseworker testified that she does not believe Vivian has taken full ownership and has not changed.

The Caseworker testified that Andrew was incarcerated at the beginning of the case but was released in February 2020. According to the Caseworker, at the beginning of the case when Andrew was incarcerated, Andrew sent a letter to the trial court stating that he did not want his parental rights terminated and he was willing to work with the Department and do what he could to obtain custody of his child. The Caseworker testified she created a family plan for Andrew, and his family plan was admitted into evidence. The Caseworker testified that Andrew failed to comply with his family plan in that he did not complete paperwork required by the Department despite being mailed several copies, he failed to attend required meetings and visits when not incarcerated and failed to notify the Caseworker that he would be unable to attend, he failed some of the required random drug tests (many of which were similar dates to Vivian's failed tests), failed to provide pay stubs as proof of employment even though he reported working at McDonald's and then Whataburger, failed to provide his child with hygiene and personal items during the case, failed to maintain independent housing but instead was living with Vivian even though he was not listed on her public housing lease, and he was discharged for unsuccessfully completing his outpatient meetings. Andrew also failed to follow the recommendations from his psychosocial assessment such as maintaining a stable environment for his family and participating in individual counseling and parenting classes. According to the Caseworker, the report from his psychosocial assessment

11

stated that Andrew was difficult to engage, offered little information, and denied issues of domestic violence and drugs. The results from Andrew's alcohol and drug tests were also admitted into evidence, and he tested positive for marijuana on July 21, 2020, September 11, 2020, September 22, 2020, October 28, 2020, and November 12, 2020. According to the Caseworker, the case manager at the outpatient facility where Andrew was attending services reported that Andrew was not very compliant, would not fully participate, and he was not really concerned because Vivian "was doing everything that needs to be done to get . . . his child back." The Caseworker testified that Andrew was ultimately terminated from the services.

The Caseworker testified that she believed termination of Andrew's parental rights to Angie is in her best interest because Andrew "has not shown the ability to step up and to do what needs to be done to make sure that he's being a protective parent and that his child[] can safely return home to a home environment that is loving and nurturing and free of drugs." The Caseworker agreed that Andrew and Vivian "sit around, smoke marijuana" and that although they find time and money to do drugs, neither of them has proven they work and neither of them provided their children necessities while the children have been in the Department's care.

<u>Testimony of the Court-Appointed Special Advocate (CASA)</u>

The CASA testified that she filed a report with the court, and the report was admitted into evidence. The CASA recommended that Vivian's and Andrew's parental rights be terminated, and that termination of their parental rights is in the children's best interest. The CASA testified that she does not support the boys being placed back into an unstable situation where they had the ability to do drugs and where there is no discipline or structure. She testified that she "can't even see the other side of it if these children were placed back into the situation that they were removed from[]" and that she "ha[s]n't seen anything that assures [her] that that's the best thing for them."

The CASA testified that she witnessed that after the boys would visit with their mom "they seem[ed] to go off the deep end afterwards[]" and they got "angry" or "sullen." She believes the children "deserve a loving, safe home, to be given a chance to do the best they can do[,]" and "do[es]n't think putting them in the home with [Vivian] is the right thing to do[]" or that it is best for them to go back. According to the CASA, Vivian is "just not able to provide the type of environment that's conducive to [the children] becoming good young people and contributing to society[,]" and the CASA wants the children "to have a chance to matriculate and grow into healthy human beings[.]" The CASA testified that she has had contact

with Vivian's cousin who has been approved as a placement by the Department, and that she believes the cousin would be an appropriate caregiver.

Specifically, as to Andrew, the CASA testified that it is in Angie's best interest that Andrew's parental rights be terminated because Andrew "going back into a situation that's in the same household with [Vivian], that doesn't provide a healthy environment for [Angie], not at all. And the drug use, no. No." The CASA also did not believe it is in Angie's best interest to have a different placement for Angie from Amy and Allison because the three girls are "tight-knit[,]" "depend on each other[,]" have "that mental need to be with each other." According to the CASA, although she tried to contact Andrew, she never spoke directly to him but he "hasn't demonstrated that he wants to do everything necessary, including removing himself from the household of [Vivian] and providing a stable home on his own to provide for his child."

Vivian's Testimony

Vivian testified that she had been evicted from her apartment but still had three days left at the hotel when the children were removed, and so she believed her children were removed prematurely by the Department. She testified that since the case started her children have experienced a worse quality of life than when they were with her. She stated that she has never had the children removed from her before, the children were active in school and sports, and she does not want her

parental rights terminated but wants "the opportunity to continue to be the best mother that [she] can be to [her] kids." She believes that her children's "actions have been because of the separation and the moving around and them not understanding a lot." She explained that since the time she had her first child in 1999 or 2000 she has been the only one there for her children while "their dads have been in and out of jail[.]" She testified that it is important to be a good role model for her children, but that "smoking dope" does not make her a good role model and she has no excuse for "continu[ing] to smoke dope throughout the majority of this case." Vivian testified that even though many of her positive drug tests were urine tests, she believed the level of the marijuana in her system "was actually decreasing throughout the process of [her] testing[]" until "it was completely out of [her] system and [she] was testing negative." According to Vivian, her parental rights should not be terminated because she has complied with everything the court has asked her to do and was honest with the judge when he asked her each time whether she was going to test positive or negative for drugs. Vivian testified that the Department removed her children when she was still at the hotel and had time to find suitable housing. She testified that her counseling during this case helped her realize that although she never thought drugs were more important than her children, she had to do certain things and she is "a thousand percent better now" and able to care for her children.

She denied that Andrew lives with her and testified that he "inquires [] almost every day about his daughter[]" and "he is maybe living with one of his guy friends." She testified that he stayed briefly when he was released from jail and she "helped him to pretty much get on his feet to where he . . . was able to start doing the things that he needed to do and able to – to better himself."

<u>Andrew's Testimony</u>

Andrew testified that he does not want his parental rights of three-year old Angie terminated, and he needs more time to complete his services. Andrew testified that when Angie is with him he is "a hundred percent into what she has going on[,]" and that he has "nothing else to do with [his] life but to be there for [her]." According to Andrew, the job he had at the time of trial, at Whataburger, did not provide pay stubs and he had told that to the Caseworker. He testified he has tried to call the Caseworker after work, and he has left her voicemails. He acknowledged that he did not have his own housing but lived with a friend. Andrew agreed that the Department gave him ample opportunity to do anything in his power to get Angie back, but he failed to complete his family services plan. He admitted failing every drug test he has taken for the Department but testified that "right now I don't smoke and I haven't been tested in about a month, month and a half." He admitted missing his first psychosocial appointment and that was not being a responsible parent, but that he got off work late that night and overslept. Andrew admitted that in 2018 he pleaded

16

no contest to an assault family violence charge against Vivian in Jefferson County and he was sentenced to thirty days in jail. A copy of the 2018 judgment for assault family violence was admitted into evidence. He also acknowledged he was indicted for possession of methamphetamine in July of 2018, and that the case was dismissed because he was in custody on a warrant in Houston for assault family violence against a cousin.

Findings of the Trial Court

At the conclusion of the hearing, the trial court found that the Department had shown, by clear and convincing evidence, that it was in the children's best interest to terminate Vivian's and Andrew's parental rights. The trial court found that the Department had shown by clear and convincing evidence that Vivian had knowingly allowed the children to remain in conditions that endangered their physical or emotional well-being and engaged in conduct or knowingly left the children with persons who engaged in conduct that endangered their physical or emotional well-being. The trial court also found that the Department had shown by clear and convincing evidence that Vivian failed to comply with the provisions of a court order that specifically established the actions necessary for Vivian to obtain the return of her children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from her under Chapter 262 for the abuse or neglect of the children. The trial court

17

also found that the Department had shown by clear and convincing evidence that Andrew had knowingly allowed Angie to remain in conditions that endangered her physical or emotional well-being and engaged in conduct or knowingly left Angie with persons who engaged in conduct that endangered her physical or emotional well-being. The trial court also found that the Department had shown by clear and convincing evidence that Andrew failed to comply with the provisions of a court order that specifically established the actions necessary for Andrew to obtain the return of Angie who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of Angie's removal from him under Chapter 262 for the abuse or neglect of Angie.

Andrew's Appeal

Andrew's counsel submitted a brief in which counsel contends that there are no arguable grounds on appeal. *See Anders*, 386 U.S. at 744; *In re L.D.T.*, 161 S.W.3d at 731. The brief provides counsel's professional evaluation of the record. Counsel served Andrew with a copy of the *Anders* brief filed on his behalf. This Court notified Andrew of his right to file a pro se response, as well as the deadline for doing so. This Court did not receive a pro se response.

We have independently reviewed the appellate record and counsel's brief, and we agree that any appeal would be frivolous. We find no arguable error requiring us to order appointment of new counsel to re-brief this appeal. *Cf. Stafford v. State*, 813

S.W.2d 503, 511 (Tex. Crim. App. 1991). Accordingly, the trial court's judgment terminating Andrew's parental rights to Angie is affirmed. We deny the motion to withdraw filed by Andrew's court-appointed appellate counsel because an attorney's duty extends through the exhaustion or waiver of all appeals. *See* Tex. Fam. Code Ann. § 107.016(3)(B); *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016). Should Andrew decide to pursue an appeal to the Supreme Court of Texas, counsel's obligations to Andrew can be met "by filing a petition for review that satisfies the standards for an Anders brief." *See In re P.M.*, 520 S.W.3d at 27-28.

Vivian's Appeal

<u>Issues on Appeal</u>

In issue one, Vivian challenges the legal and factual sufficiency of the evidence of supporting the trial court's finding that the State proved by clear and convincing evidence that Vivian knowingly placed or knowingly allowed Jason, Jake, Amy, Allison, and Angie to remain in conditions or surroundings which endanger their physical or emotional well-being. *See* Tex. Family Code Ann. § 161.001(b)(1)(D). In issue two, Vivian challenges the legal and factual sufficiency of the evidence of supporting the trial court's finding that the State proved by clear and convincing evidence that Vivian engaged in conduct or knowingly placed Jason, Jake, Amy, Allison, and Angie with persons who engaged in conduct which endangers their physical or emotional well-being. *See id.* § 161.001(b)(1)(E). In her

third issue, Vivian challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the State proved by clear and convincing evidence that Vivian failed to comply with the provisions of the court order that specifically established the actions necessary for the mother to obtain the return of Jason, Jake, Amy, Allison, and Angie. *See id.* § 161.001(b)(1)(O). In issue four, Vivian challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that the State proved by clear and convincing evidence that terminating Vivian's parental rights as to Jason, Jake, Amy, Allison, and Angie was in their best interest. *See id.* § 161.001(b)(2).

Standard of Review

The decision to terminate parental rights must be supported by clear and convincing evidence, that is, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.L.*, 163 S.W.3d at 84.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief

20

or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of the witnesses. *See id.* at 109 (citing *In re J.L.*, 163 S.W.3d at 86-87).

Endangerment

Due process requires a heightened standard of review of a trial court's finding under subsections 161.001(b)(1)(D) or (E), even when another ground is sufficient

for termination, because of potential consequences of the parent's parental rights to a different child. *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). Under subsection D, parental rights may be terminated if clear and convincing evidence supports that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Subsection E allows for termination of parental rights if clear and convincing evidence supports that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(E).

Under subsection D, parental rights may be terminated based on a single act or omission by the parent. *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.) (citing *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied)). Termination under subsection E requires more than a single act or omission and a "'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *Id.* at 923 (quoting *Perez v. Tex. Dep't of Protective & Regulatory Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.)). As for subsection D, we examine the time before the child's removal to determine whether the environment of the home posed a danger to the child's physical or emotional well-being. *Id.* at 925 (citing *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—

22

Texarkana 2004, no pet.)). "A finding of endangerment under subsection E, however, may be based on conduct before and after removal." *In re A.L.H.*, 515 S.W.3d 60, 93 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). "'A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards.'" *Id.* (quoting *In re N.B.*, No. 06-12-00007-CV, 2012 Tex. App. LEXIS 3587, at **22-23 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.)). The child does not have to suffer actual injury; it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *In re C.L.C.*, 119 S.W.3d 382, 392 (Tex. App.—Tyler 2003, no pet.). Generally, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Abusive or violent conduct by a parent may produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

In addition, a pattern of drug abuse will also support a finding of conduct endangering a child even if there is no evidence that such drug use caused a physical or actual injury to the child. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A history of illegal drug use is conduct that subjects a child to a life that is uncertain and

unstable, endangering the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A parent's drug use, incidents of domestic violence, criminal history, and employment and housing instability prior to and during the case create a course of conduct from which the factfinder could determine the parent endangered the child's emotional and physical well-being. *See In re M.C.*, No. 09-18-00436-CV, 2019 Tex. App. LEXIS 2961, at **15-16 (Tex. App.—Beaumont Apr. 11, 2019, not pet.) (mem. op.); *see also In re S.R.*, 452 S.W.3d at 361-62 (parent's drug use may qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination under subsection E because "it exposes the child to the possibility that the parent may be impaired or imprisoned[]"). A parent's continued drug use when the custody of his or her child is in jeopardy supports a finding of endangerment. *See In re S.R.*, 452 S.W.3d at 361-62 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A parent's mental illness is not a ground for terminating the parent-child relationship, but untreated mental illness or a parent's failure to take required medication can result in neglect or expose a child to

24

endangerment, and it is a factor the court may consider. *See In re L.J.*, No. 09-19-00457-CV, 2020 Tex. App. LEXIS 4271, at *14 (Tex. App.—Beaumont June 9, 2020, no pet.) (mem. op.) (citing *In re P.H.*, 544 S.W.3d 850, 857-58 (Tex. App.—El Paso 2017, no pet.)); *In re S.R.*, 452 S.W.3d at 363.

The trial court heard evidence that Vivian began smoking marijuana at age thirteen and continued to use marijuana during the pendency of the case. The trial court also heard evidence that on one occasion during the case Vivian tested positive for cocaine. The trial court heard the Caseworker's testimony of Vivian's repeated positive drug tests even up to about a month before trial, that Vivian does not acknowledge she has a drug problem or want to change, and that the boys had admitted to the Caseworker that they would get their marijuana from their mother or oldest brother. The trial court also heard the CASA's testimony that she would not recommend returning the children to an environment with drugs. The trial court heard the Caseworker's testimony that during Vivian's psychological evaluation that she admitted her children were involved in making synthetic drugs.

The trial court heard the Caseworker's testimony that Vivian was unable to demonstrate what she had learned from the parenting classes as required by her plan. The trial court heard the Caseworker's testimony that Vivian reported symptoms of bipolar disorder as well as manic phase, elevation in mood, and irritability but she never sought treatment for these or followed the recommendations from the

25

psychological evaluation to receive continued psychological and psychiatric health care, medication management, and individual outpatient psychotherapy.

The trial court heard evidence of Vivian being confrontational and irate and that she was not allowed in nearby shelters due to her prior behavior. The trial court heard evidence that even after Andrew was released from jail after he pleaded no contest to assaulting Vivian, Vivian allowed him to stay at least briefly with her and the children and he continued to test positive for drugs throughout the case. The trial court also heard evidence of Vivian's employment and housing instability before and during the case.

Deferring to the trial court's credibility determinations and reviewing all the evidence in the light most favorable to the termination findings under subsections D and E, the trial court could reasonably have formed a firm belief or conviction that Vivian, through her individual acts or omissions or a course of conduct, endangered the children's physical or emotional well-being. We conclude the Department established, by clear and convincing evidence, that Vivian committed the predicate acts enumerated in subsections D and E. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). Further, considering the entire record, we conclude the disputed evidence the trial court could not reasonably have credited in favor of its endangerment findings is not so significant that the court could not reasonably have

formed a firm belief or conviction that Vivian endangered the children. *See In re J.F.C.*, 96 S.W.3d at 266.

We need not address the sufficiency of the evidence to support a violation of subsection O. *See In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.) ("If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights."). We overrule issues one and two, and we decline to address issue three.

Best Interest of the Children

Trial courts have wide latitude in determining the children's best interest. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). There is a strong presumption that the best interest of the children is served by keeping the children with their parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing Tex. Fam. Code Ann. § 153.151); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

The Family Code outlines factors to be considered in determining whether a parent is willing and able to provide a safe environment for the children. *Id.* § 263.307(b). Several other nonexclusive factors may be considered when determining whether termination of parental rights is in the best interest of the children,

including: (1) the desires of the children, (2) the emotional and physical needs of the children now and in the future, (3) the emotional and physical danger to the children now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the children, (6) the plans for the children by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the act or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (setting for the "*Holley* factors" and noting "[t]his listing is by no means exhaustive[]"); *see also In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (characterizing the *Holley* factors as "nonexclusive"). No particular *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the children's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of a child.") (citing *In re C.H.*, 89 S.W.3d at 27); *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).

A parent's past conduct is relevant to determining the parent's present and future ability to care for a child. *See In re C.H.*, 89 S.W.3d at 28 (parent's past

performance as a parent is relevant to determination of present and future ability to provide for child); *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) (factfinder may measure parent's future conduct by past conduct). Evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship, and the best-interest determination may rely on direct or circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). If, in light of the entire record, no reasonable factfinder could form a firm belief or conviction that termination was in the children's best interest, then we must conclude that the evidence is legally insufficient to support termination. *See In re J.F.C.*, 96 S.W.3d at 266.

We have already explained the evidence presented at trial shows Vivian has a history of drug use. The trial court heard both the Caseworker and the CASA testify that they recommended termination of Vivian's parental rights and that the termination of her parental rights would be in the children's best interest. The trial court heard that the Department is trying to find a placement for Jason, that Jake is doing well in his current foster home, and that Vivian's cousin has been approved by the Department to be the caregiver for Amy, Allison, and Angie. The trial court heard the CASA's testimony that she has been in contact with the cousin and

believes she would be an appropriate caregiver. The trial court heard Vivian's testimony and could have reasonably concluded that Vivian would continue to use drugs and make drugs available to her children, and that Vivian would not be able to maintain stable employment or housing. The trial court could have also reasonably concluded that Vivian would continue to be involved with Andrew despite his history of drug use and violence.

Having considered the evidence related to best interest, deferring to the trial court's determinations on witness credibility, the resolution of conflicts in the evidence, and the weight to be given the testimony, we conclude that the statutory and *Holley* factors weigh in favor of the trial court's finding that termination is in the children's best interest. *See* Tex. Fam. Code Ann. §§ 161.001(b)(2), 263.307(a); *In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We also conclude that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Vivian's parental rights is in the children's best interest. We overrule issue four.

We affirm the trial court's order of termination.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 21, 2021
Opinion Delivered June 10, 2021

Before Golemon, C.J., Kreger and Johnson, JJ.

30