

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-22-00072-CV

---

IN THE INTEREST OF M.H., A CHILD

---

On Appeal from the 307th District Court
Gregg County, Texas
Trial Court No. 2021-1149-DR

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

During a traffic stop of the vehicle Mother was driving, an odor of marihuana emanated from the vehicle, and eleven-month-old M.H.[1] was found unrestrained in the front passenger seat. After an unknown amount of marihuana was found in the vehicle, Mother was arrested, and the Texas Department of Family and Protective Services removed M.H. from Mother's care on grounds of neglectful supervision. Later, Mother admitted to a Department investigator that she had smoked marihuana before she placed M.H. in the vehicle and that she had removed M.H. from her car seat and put her in the front seat because M.H. was hot, itching, and crying.

Over one year after M.H. was removed from Mother's care, the trial court determined that the termination of Mother's parental rights was in the best interest of M.H.[2] and terminated Mother's parental rights on four grounds set out in Section 161.001(b)(1), subsections (D), (E), (O), and (P), of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O), (P). On appeal, Mother[3] asserts that the evidence is legally and factually insufficient to support the trial court's findings on the statutory grounds and that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the child's best interest. Because we find that sufficient evidence supports the trial court's finding under statutory ground E and its finding on the child's best interest, we will affirm the trial court's judgment.

---

[1]We identify all minors by their initials and other family members by fictitious names. *See* TEX. R. APP. P. 9.8(b).

[2]*See* TEX. FAM. CODE ANN. § 161.001(b)(2).

[3]Father has not appealed the termination of his parental rights.

## I.  Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In re E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).  "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children." *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).  "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014)).  This Court is required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001; *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)).  "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. § 101.007 (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)).  "This standard of proof necessarily affects our review of the evidence." *Id.*

3

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine '"whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 108) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "'[I]n making this determination,' we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*,

4

437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d at 26)). "We also recognize that the trial court, as the fact-finder, is the sole arbiter of a witness' demeanor and credibility, and it may believe all, part, or none of a witness' testimony." *In re A. M.*, No. 06-18-00012-CV, 2018 WL 3077784, at *3 (Tex. App.—Texarkana June 22, 2018, pet. denied) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d at 109).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *In re L.E.S.*, 471 S.W.3d at 920 (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

## II.     Sufficient Evidence Supported the Trial Court's Statutory Ground E Finding

### A.     Statutory Ground E Requirements

Mother asserts that the evidence is legally and factually insufficient to support the trial court's findings under grounds D, E, O, and P. "Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362). "Even so, when the trial court's findings under grounds D or E are challenged on appeal, due process demands that we review the evidence supporting the findings under at least one of those grounds

5

when they are challenged on appeal." *In re S.A.W.*, No. 06-21-00116-CV, 2022 WL 1193667, at *3 (Tex. App.—Texarkana Apr. 22, 2022, pet. denied) (mem. op.) (citing *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("We hold that due process and due course of law requirements mandate that an appellate court detail its analysis for an appeal of termination of parental rights under Section 161.001(b)(1)(D) or (E) of the Family Code."). "This is because termination of parental rights under these grounds may implicate the parent's parental rights to other children." *Id.* (citing *In re N.G.*, 577 S.W.3d at 234; TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (providing as a ground for termination of parental rights that the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)")).

Under statutory ground E, parental rights may be terminated "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923. "Under subsection (E), it is sufficient that the child's well-being is jeopardized or exposed to loss or injury." *Id.* (citing *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367). Nevertheless, "'endanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "Further, termination under subsection (E) must be based on more than a single act or omission. Instead, a

6

'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *In re L.E.S.*, 471 S.W.3d at 923 (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.))); *see Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67.

"[Statutory ground E] refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act." *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied); *see In re N.S.G.*, 235 S.W.3d at 366–67. "The conduct to be examined includes what the parent did both before and after the child was born." *In re S.K.*, 198 S.W.3d at 902; *see In re N.S.G.*, 235 S.W.3d at 367. "The endangering conduct may also occur 'either before or after the child's removal by the Department.'" *In re S.A.W.*, 2022 WL 1193667, at *4 (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 19, 2019, pet. denied) (mem. op.)). "Failing to provide appropriate medical care for a child may also be endangering conduct." *In re S.A.W.*, 2022 WL 1193667, at *4 (citing *In re H.M.O.L.*, Nos. 01-17-00775-CV, 01-17-00776-CV, 2018 WL 1659981, at *13 (Tex. App.—Houston [1st Dist.] Apr. 6, 2018, pet. denied) (mem. op.); *In re S.G.F.*, No. 14-16-00716-CV, 2017 WL 924541, at *6 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.) (mem. op.); *In re D.V.*, 480 S.W.3d 591, 601 (Tex. App.—El Paso 2015, no pet.)). Under statutory ground E, "a parent's failure to complete relevant requirements of his service plan" is a relevant consideration. *In re S.A.W.*, 2022 WL 1193667, at *4 (citing *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.)).

"[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and h[er] ability to parent may establish an endangering course of conduct." *In re N.S.G.*, 235 S.W.3d at 367–68 (quoting *In re A.J.H.*, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no pet.)). "'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' statutory Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.)). In addition, a parent's inability to provide stable housing and to adequately provide for a child may support a finding of endangerment under statutory ground E. *See In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *5 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.).

### B. Evidence at Trial

The evidence relevant to the trial court's statutory ground E finding showed that M.H. was removed from Mother's care after Mother was arrested following a traffic stop. The officer conducting the traffic stop noticed the odor of marihuana emanating from the vehicle, found M.H. unrestrained in the front seat, and discovered an unknown amount of marihuana in the vehicle. Mother admitted to Jaqueline Ibarra, a Department investigator, that she had smoked marihuana before she got into the vehicle with M.H. and that she took M.H., who was eleven months old at the time, out of a car seat and put her in the front seat, unrestrained. At trial, Mother claimed that she had M.H. in a seatbelt but also acknowledged that it was not a good idea

to have M.H. unrestrained in the front seat of a moving vehicle. She also acknowledged that it was not a good idea to use marihuana before she put M.H. in the vehicle, and she admitted that there was marihuana in the vehicle when she was stopped. Ibarra testified that, based on her training, the use of marihuana can slow reflexes and impair awareness of surroundings when operating a motor vehicle.

In order to obtain the return of M.H., the trial court ordered Mother, among other things, (1) to submit to a court-ordered psychological evaluation, (2) to attend and cooperate in counseling sessions to address the specific issues that led to removal and any other issues identified in the psychological evaluation, (3) to submit to a court-ordered drug and alcohol dependency assessment, (4) to follow any recommendations from the assessment, (5) to submit to random drug testing, and (6) to comply with the Department's original and any amended service plans. On July 28, 2021, the original service plan required Mother, among other things, to address her use of marihuana by (1) participating in a psychosocial evaluation, (2) following all recommendations on the evaluation, (3) participating in counseling twice monthly, (4) participating in substance-abuse counseling twice monthly, (5) participating in a drug/alcohol assessment through East Texas Council on Alcoholism and Drug Abuse (ETCADA), (6) completing the drug treatment program recommended by ETCADA, and (7) submitting to random drug testing. On August 11, 2021, the trial court approved the original service plan.

Although Mother completed her drug assessment with ETCADA and a substance abuse evaluation with Guided Minds, she did not participate in the recommended substance-abuse counseling, recovery groups, or a substance-abuse treatment program. Mother tested positive for

9

marihuana in August, October, and November 2021, and in January, February, and March 2022. Mother failed to submit to requested drug tests eleven times, without excuse, including each month until one week before the final hearing. Mother also refused to stop smoking marihuana and testified that the last time she purchased marihuana was the night before the final hearing.

At the time of removal, M.H. also had a severe case of untreated eczema and had cracks in her skin all over her body. Mother acknowledged that M.H. had eczema, denied that she had very dry skin, and explained that she had M.H. "greased down." Latoya Lister, a caseworker for the Department, testified that, based on her training and experience, marihuana use can affect a person's ability to care for a young child, can impair judgment, and can impair the ability to function correctly.

The family service plan also required Mother to demonstrate the ability to support M.H. by maintaining stable employment or obtaining other sources of income and to maintain safe and hazard-free housing. Although Mother told Lister that she had worked at various places during the course of the case, she never provided Lister with a check stub or other information to enable her to verify the income. At trial, Mother testified that she cut hair for cash and sold plates of food. Nevertheless, she did not know how much she made cutting hair in the month before trial, and she did not earn anything selling plates of food that month. Mother also testified that she lived in Longview at the beginning of the case, moved to Dallas and lived with Father for a period of time, moved back to Longview and lived with her father, moved back to Dallas and lived in hotels, and moved back to Longview two weeks before trial. She also testified that she lived with Father at the beginning of this case until about six months before trial. She said she

10

had lived with him for two and one-half to three years but left him because she was being abused. Mother also admitted that, if M.H. went home with her that day, M.H. did not have a bed, other furniture, or toys.

The evidence also showed that Mother was inconsistent in her visitations with M.H. Lister testified that, although the Department's Dallas office[4] scheduled weekly visits with M.H., Mother visited every other week since April 2022, and sometimes only once a month. Lister attributed that inconsistency, at least in part, to Mother's changes of residence between Dallas and Longview. Latisha Redman, the Department's caseworker in Dallas assigned to the case involving Mother's other children, confirmed that the Department had scheduled Mother for weekly visitation, but because of her inconsistency, they changed to biweekly visitation in May 2022. Mother denied that she had ever had weekly visitation and maintained that she had bi-weekly visitation because her children's transporters said they did not want to do it weekly.

Redman also testified that she had called Mother the week before trial to remind her of a visitation and that Mother said she would not make it. They had a subsequent telephone call in which Mother was crying, venting, and screaming, and then Mother said, "If y'all take my kids, I'm going on a mass murder spree." Mother denied that she said she intended to go on a killing spree and testified that she had said, "[Y]'all wonder why people be going on killing sprees when y'all take they [sic] kids from them, or just on drugs because y'all took they [sic] kids from them."

---

[4]Mother's six other children were previously removed by the Department because of drug use and domestic violence and were the subjects of an open case in Dallas. M.H. was placed in a foster home in Dallas with her three-year-old sister.

## C.   Analysis

The physical and emotional well-being of a child is endangered when her parent's conduct exposes her to a life of uncertainty and instability. *In re N.S.G.*, 235 S.W.3d at 367–68. Such conduct may result from the use of illegal drugs that endangers the child because of the parent's impaired judgment or because of the possibility that the parent may be imprisoned. In this case, M.H. was removed because Mother used marihuana[5] then operated a motor vehicle with eleven-month-old M.H. in the front seat, unrestrained, endangering M.H.'s physical well-being. Because marihuana use and possession is illegal in Texas, Mother's conduct also endangered M.H.'s emotional well-being by exposing M.H. to a life of instability by illegally using and possessing marihuana. Mother continued to expose M.H. to a life of uncertainty by continuing to use marihuana throughout the case. In addition, Mother failed to address the problems caused by her marihuana use when she failed to complete the substance-abuse counseling and substance-abuse treatment program required by the service plan and the trial court's order to specifically address the conduct that resulted in M.H.'s removal. Mother's use of marihuana impaired her judgment to the extent that it endangered M.H., and her continued use of the drug and failure to address that conduct through the available services show that she engaged in a voluntary, deliberate, and conscious course of conduct and omissions that endangered M.H.'s physical and emotional well-being. *See In re L.E.S.*, 471 S.W.3d at 923.

---

[5]We recognize that the current version of Section 262.116(a)(7) of the Texas Family Code provides that the Department may not remove a child based on evidence that the parent "tested positive for marihuana, unless the department has evidence that the parent's use of marihuana has caused significant impairment to the child's physical or mental health or emotional development." TEX. FAM. CODE ANN. § 262.116(a)(7) (Supp.). However, because this proceeding was filed prior to September 1, 2021, this section does not apply. *See* Act of April 28, 2021, 87th Leg., R.S., ch. 8, §§ 6, 16, 2021 Tex. Sess. Law Serv. 10, 13, 18.

A child is also exposed to a life of uncertainty and instability by a parent's failure or inability to provide stable housing and to adequately provide for the child's support. *In re S.I.H.*, 2012 WL 858643, at \*5. The evidence showed that Mother moved five times between Dallas and Longview during the course of this case, the last time less than two weeks before trial. Even at trial, Mother testified that she did not have a bed, furniture, or toys for M.H. Further, although Mother testified that she made money cutting hair and selling plates of food, she did not provide the Department with any proof of income, and she was unable to tell the trial court how much money she had made in the month before trial. Mother's failure to establish safe and stable housing and her failure to secure an adequate income to support M.H. over one year after M.H.'s removal also show a voluntary, deliberate, and conscious course of conduct and omissions that endangered M.H.

Based on this record, we find that legally and factually sufficient evidence supported the trial court's finding under statutory ground E. Since there was sufficient evidence supporting the trial court's finding under statutory ground E, we need not review its findings under grounds D, O, and P. *J.T. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-21-00070-CV, 2021 WL 2672055, at \*9 (Tex. App.—Austin June 30, 2021, no pet.) (mem. op.); *In re M.F.*, No. 14-19-00964-CV, 2020 WL 2832166, at \*8 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. denied) (mem. op.). We overrule this issue.

III.    **Sufficient Evidence Supported the Trial Court's Best-Interest Finding**

Mother also challenges the factual and legal sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the best interest of M.H.

Mother argues that, because there was evidence that she and M.H. had a strong bond, the trial court erred in its best-interest finding. We disagree.

## A. Standard of Review

"There is a strong presumption that keeping a child with a parent is in the child's best interest." *In re R.W.*, 627 S.W.3d 501, 516 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.)). "Termination 'can never be justified without the most solid and substantial reasons.'" *In re N.L.D.*, 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)).

> To determine the best interests of the child, we consider the following *Holley* factors:
>
> (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals, (6) the plans for the child by these individuals, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent.

*Id.* at 818–19 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)); *see In re E.N.C.*, 384 S.W.3d at 807; *see also* TEX. FAM. CODE ANN. § 263.307(b). These factors are not exhaustive, and there is no requirement that all of them be proved to terminate parental rights. *In re C.H.*, 89 S.W.3d at 27. Further, we may consider evidence used to support the grounds for termination of parental rights in the best-interest analysis. *Id.* at 28.

14

**B.    Analysis**

M.H. was twenty-seven months old at the time of trial and was too young to verbalize her desires. The evidence showed that Mother and M.H. were bonded and had a relationship. Although Mother thought that M.H.'s emotional well-being would be disrupted if their bond was severed, Lister could not say that M.H. would be emotionally damaged if the relationship ended, and Redman did not think that it would harm M.H. because of the bond she had with her foster mother. The evidence also showed that M.H. had strong bonds with her foster mother and with her three-year-old sister who resided in the same home. Her foster mother opined that, because they had become a family, it would be detrimental to M.H. to be removed from her home. This factor weighs neither for nor against termination of Mother's parental rights.

As stated above, (1) Mother's continued use of marihuana, (2) her failure to complete substance-abuse treatment and counseling to address the issues that lead to M.H.'s removal, (3) her failure to establish a safe and stable home for M.H., and (4) her inability to show that she had sufficient income to provide for M.H.'s needs would continue to endanger M.H. now and in the future. This evidence, along with Mother's apparent inability to recognize that she had not adequately addressed M.H.'s eczema, also demonstrated that Mother lacked the ability to provide for the emotional and physical needs of M.H. now and in the future. In addition, this evidence, coupled with Mother's lack of consistency in visitation with M.H., indicated that her parent-child relationship with M.H. was not a proper one. The evidence also showed that M.H. had lived with her three-year-old sister in her foster mother's home during most of the case and was provided a safe and stable home environment. In her foster home, M.H. had all of her

physical and emotional needs addressed, including her medical and dental needs. For these reasons, we find that the second, third, fourth, seventh, and eighth *Holley* factors weigh heavily in favor of termination.

Finally, M.H.'s foster mother testified that, if given the opportunity, she would provide M.H. with a forever home and would adopt her if she was able. Although Mother testified that she was living in her cousin's house and that he was willing to let them stay until they could get their own house, she had lived there less than two weeks, had made no provision for M.H. to live with her, and was unable to show that she would be able to provide for M.H. We find that the sixth factor also weighs in favor of termination.

Based on this record, a fact-finder reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in M.H.'s best interest. As a result, we find that factually and legally sufficient evidence supports the trial court's best-interest finding. We overrule this issue.

## IV. Disposition

Because sufficient evidence supports at least one statutory ground finding and the best-interest finding, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:    January 9, 2023
Date Decided:    March 30, 2023

16